STATE OF NORTH CAROLINA v. JAMES HOLLIS WATTS

No. 2A02

(Filed 22 August 2003)

## 1. Evidence— testimony—someone other than defendant committed crime

The trial court did not err in a capital first-degree murder, felonious breaking and entering, and robbery with a dangerous weapon case by excluding the testimony of a defense witness who testified during voir dire that she overheard defendant's coparticipant threaten the victim's life, because: (1) the fact that the coparticipant had a motive to kill the victim does not exclude the possibility that defendant was also involved in the murder of the victim; (2) any possible error in the exclusion of the witness's testimony was harmless when the jury was presented with testimony that the coparticipant was solely responsible for the murder; (3) although defendant now contends the exclusion of the testimony violated his constitutional rights under the Sixth, Eighth, and Fourteenth Amendments, this issue was not raised before the trial court; and (4) although defendant contends the testimony was admissible under exceptions to the hearsay rule, the testimony was already determined to be properly excluded as irrelevant under the theory of third-party guilt.

## 2. Criminal Law— closing argument—coparticipant's fellow inmate did not come to testify voluntarily

The trial court did not abuse its discretion in a capital first-degree murder, felonious breaking and entering, and robbery with a dangerous weapon case by concluding that defense coun-

sel's closing argument, that the coparticipant's fellow inmate did not come back to North Carolina voluntarily to testify and that he was ordered to do so by a judge, was improper because: (1) even if the trial court erred by sustaining the State's objection, the error was harmless since the essence of the testimony was allowed in the argument after the objection was sustained; and (2) the inmate's testimony was not credible when it related to establishing that the coparticipant was the sole participant in the murder which contradicted testimony from other witnesses.

3. **Sentencing— capital—acting in concert—*Enmund/Tison* instruction—defendant's intent to kill**

The trial court did not abuse its discretion in a capital sentencing proceeding by failing to give the jury an *Enmund/Tison* instruction, even though the jury was given an acting in concert instruction, because: (1) the trial court's acting in concert instruction prevented the jury from concluding that defendant alone or acting with another, committed premeditated first-degree murder without also finding that defendant intended to kill the victim; and (2) although defendant contends the prosecutor improperly argued the meaning of acting in concert, any possible confusion was rendered harmless by the trial court's instructions and it is presumed that the jury followed the trial court's instructions.

4. **Homicide— first-degree murder—indictment—failure to allege aggravating circumstance**

Although defendant contends the failure of the indictment used to charge him with first-degree murder to allege any aggravating circumstance was a jurisdictional defect requiring that his death sentence be vacated and a sentence of life imprisonment without parole be imposed, this argument has already been rejected by our Supreme Court.

5. **Sentencing— capital—mitigating circumstance—accomplice or accessory—minor participation**

The trial court did not err in a capital sentencing proceeding by failing to submit the N.C.G.S. § 15A-2000(f)(4) mitigator that defendant was an accomplice in or accessory to the capital felony committed by another person and that his participation was relatively minor, because based on the evidence the jury could not reasonably have found that defendant played a relatively minor role in the murder of the victim.

**6. Constitutional Law— effective assistance of counsel—failure to present mitigating evidence—waiver**

A first-degree murder defendant's ineffective assistance of counsel claim based on defense counsel's failure to present any mitigating evidence during the capital sentencing phase has not been waived by his failure to raise the issue before the Supreme Court on direct appeal, because it does appear that there are evidentiary issues which may need to be developed before defendant will be in a position to adequately raise his potential claim.

**7. Sentencing— capital—death penalty—proportionate**

The trial court did not err in a first-degree murder case by sentencing defendant to the death penalty, because: (1) the jury found the aggravating circumstances under N.C.G.S. § 15A-2000(e)(4) that the murder was committed to avoid a lawful arrest, under N.C.G.S. § 15A-2000(e)(5) that the murder was committed while defendant was engaged in the commission of a robbery, and under N.C.G.S. § 15A-2000(e)(9) that the murder was especially heinous, atrocious, or cruel; and (2) defendant was convicted on the basis of malice, premeditation and deliberation, and under the felony murder rule.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Judge W. Erwin Spainhour on 19 July 2001 in Superior Court, Davidson County, upon a jury verdict finding defendant guilty of first-degree murder. On 22 August 2002, the Supreme Court allowed defendant's motion to bypass the Court of Appeals as to his appeal of additional judgments. Heard in the Supreme Court 9 April 2003.

*Roy Cooper, Attorney General, by Jill Ledford Cheek and William P. Hart, Special Deputy Attorneys General, for the State.*

*Staples Hughes, Appellate Defender, by Benjamin Dowling-Sendor, Assistant Appellate Defender, for defendant-appellant.*

LAKE, Chief Justice.

Defendant was indicted on 3 January 2000 for one count of first-degree murder, one count of felonious breaking and entering, and one count of robbery with a dangerous weapon. The cases came on for

trial at the 2 July 2001 Special Criminal Session of Superior Court, Davidson County.

On 18 July 2001, the jury returned a verdict of guilty as to all of the charges and, following a capital sentencing proceeding, recommended a sentence of death for the first-degree murder. Defendant was sentenced to death and further received a sentence of 11 to 14 months' imprisonment for felonious breaking and entering and a sentence of 117 to 150 months' imprisonment for robbery with a dangerous weapon. For the reasons that follow, we conclude that defendant's trial and sentences, including specifically his capital sentencing proceeding, were free of prejudicial error and that defendant's sentence of death is not disproportionate.

The evidence at trial showed that on the morning of 22 November 1999, Thomas Gene Owens returned to his home in Linwood, North Carolina, to find his wife, Joyce McBride Owens, the victim, lying in a pool of blood on their living room floor. The victim's body had numerous stab wounds and two gunshot wounds to the head. The victim's throat had been slit, and her left wrist had been tied with a black electrical cord.

The evidence further showed that earlier on the morning of 22 November, James Hollis Watts, defendant, and Alton Cline McIntyre, codefendant, had been to the victim's house. A few days before the murder, Johnny Pierce, defendant's friend, had talked with defendant and McIntyre about obtaining guns for him. On the day of the murder, defendant and McIntyre went to the victim's house with the intent of stealing guns known to be kept there. Defendant and McIntyre knocked on the victim's door. When the victim came to the door, defendant inquired as to whether her husband was home. After establishing that the victim was alone, defendant pulled out a semiautomatic gun and forced the victim into her house.

Defendant then ordered McIntyre to tie up the victim's hands. While McIntyre was attempting to tie the victim's hands with a black electrical cord, defendant took a kitchen knife and cut her throat. Defendant and McIntyre then stabbed the victim numerous times before she fell to the floor.

The evidence also showed that after disabling the victim, defendant and McIntyre went to the gun cabinet in the master bedroom and took two rifles, two shotguns, and one "muzzle loader." They also found and took two crossbows that were displayed on the wall. After taking the weapons, defendant took a pillow from the victim's bed,

put it over her head to muffle the sound, and shot the victim twice in the head.

After leaving the victim's house, defendant and McIntyre initially went to the home of defendant's girlfriend, Kathy Coleman. At Coleman's house, McIntyre changed clothes and washed off. Defendant and McIntyre then traveled to Salisbury, North Carolina, to the home of defendant's sister, Tanya Gentry. Gentry noticed that defendant looked as if he had "held something up and gutted it." Defendant explained the presence of blood on his clothes by telling Gentry that he and McIntyre had been hunting.

At Gentry's house, defendant disposed of the evidence. He gave his sister the two kitchen knives which were used to kill the victim and informed her they were "tater knives." Defendant also asked his sister to destroy his bloody clothes.

On or about 23 November 1999, defendant and McIntyre went to Pierce's home to sell the stolen weapons. Defendant and McIntyre received only "a couple hundred dollars" and a bag of marijuana as payment for the weapons.

Defendant acknowledges that several of the assignments of error presented in his brief are preservation issues, all of which we address as such later in this opinion. Further, we note that defendant has interspersed these preservation issues throughout his brief. Accordingly, we will address each of defendant's remaining substantive assignments of error sequentially, without numerical reference.

[1] In his first substantive assignment of error, defendant argues that the trial court erred by excluding the testimony of defense witness Chasity Hill. During *voir dire*, Hill testified that she overheard codefendant McIntyre threaten the victim's life. Defendant contends that this testimony was relevant to establish third-party guilt.

Hill dated the victim's grandson, Terry Owens, for almost two years. Around March 1997, while at the victim's home, Hill overheard the victim talking on the phone with McIntyre. Hill testified that the victim was "upset" after her conversation with McIntyre and that the victim told Hill that McIntyre had "threatened to kill her." The trial court concluded this testimony was not relevant. We agree.

When the evidence at issue is proffered to establish that someone other than the defendant committed the crime: " '[A]dmission of the

evidence must do more than create mere conjecture of another's guilt in order to be relevant. Such evidence must (1) point directly to the guilt of some specific person, and (2) be inconsistent with the defendant's guilt.' " *State v. Burr*, 341 N.C. 263, 293, 461 S.E.2d 602, 618 (1995) (quoting *State v. McNeill*, 326 N.C. 712, 721, 392 S.E.2d 78, 83 (1990)), *cert. denied*, 517 U.S. 1123, 134 L. Ed. 2d 526 (1996); *see also State v. Brewer*, 325 N.C. 550, 564, 386 S.E.2d 569, 576 (1989), *cert. denied*, 495 U.S. 951, 109 L. Ed. 2d 541 (1990). Evidence tending to show that someone other than the accused had the opportunity to commit the crime, yet not tending to show that such person rather than the defendant actually committed the crime, is too speculative and remote to be relevant. *Burr*, 341 N.C. at 293, 461 S.E.2d at 618; *Brewer*, 325 N.C. at 564, 386 S.E.2d at 576.

Defendant's theory of the case was that McIntyre killed the victim because the victim stated that she intended to prove that McIntyre had committed a crime for which the victim's grandson had been punished. Further, defendant sought to establish that McIntyre included him in the crime to make it appear that a break-in and robbery were the motives behind the victim's murder.

The testimony that McIntyre allegedly threatened the victim was proffered to establish that McIntyre had a motive for killing the victim and that the murder by McIntyre was premeditated. While this evidence supported the conclusion that McIntyre was involved in killing the victim, it was not "inconsistent with the defendant's guilt." *See Burr*, 341 N.C. at 293, 461 S.E.2d at 618. The evidence presented at trial established that *both* men were involved in the vicious attack on the victim which resulted in her death. Further, the fact that McIntyre had a motive to kill the victim does not exclude the possibility that defendant was also involved in the murder of the victim. Accordingly, the testimony of Hill regarding an incident some nineteen months prior to the murder in this case was not relevant because it was not inconsistent with defendant's guilt.

Moreover, any benefit provided by Hill's testimony would have been cumulative. Julian Atwood, a fellow inmate with McIntyre, testified that McIntyre admitted to sole responsibility in the murder of the victim. Atwood also testified that defendant's involvement was limited to stealing the weapons from the victim's home. Because the jury was presented with testimony that McIntyre was solely responsible for the murder, any possible error in the exclusion of Hill's testimony was harmless.

Defendant contends that the exclusion of Hill's testimony violated his constitutional rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. This issue was not raised before the trial court. Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal. *State v. Benson*, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988). Accordingly, we will not address whether the exclusion of Hill's testimony violated defendant's constitutional rights.

Finally, defendant contends that Hill's testimony was admissible under exceptions to the hearsay rule. Having determined that this testimony was properly excluded as irrelevant under the theory of third-party guilt, we need not address this issue. This assignment of error is overruled.

**[2]** In his next assignment of error, defendant contends that the trial court erred in finding the following portion of defense counsel's closing argument improper:

[DEFENSE COUNSEL]: From this morning I remember that Julian Atwood did not want to be here. He told you that he was in New Jersey, Cape May County Jail. Didn't want to come back to North Carolina, and they held a hearing and a judge ordered he be sent back to this—

[PROSECUTOR]: Objection, your Honor. That was not the evidence.

THE COURT: Objection sustained.

[DEFENSE COUNSEL]: He came back to North Carolina. You heard that. He came in, 'cause he was in custody.

A defendant has a constitutional right to present a closing argument. *State v. Fletcher*, 354 N.C. 455, 474, 555 S.E.2d 534, 546 (2001), *cert. denied*, —— U.S. ——, 154 L. Ed. 2d 73 (2002). However, the scope and control of these arguments lies primarily within the discretion of the trial court. *State v. Carroll*, 356 N.C. 526, 536, 573 S.E.2d 899, 906 (2002), *cert. denied*, —— U.S. ——, 156 L. Ed. 2d 640 (2003). Upon objection, it is the duty of the trial court to censor remarks not warranted by the law or evidence. *State v. Barden*, 356 N.C. 316, 354, 572 S.E.2d 108, 133 (2002), *cert. denied*, —— U.S. ——, 155 L. Ed. 2d 1074 (2003). " 'This Court will not disturb the trial court's exercise of discretion over the latitude of counsel's argument absent any gross impropriety in the argument that would likely influence the jury's ver-

dict.' " *State v. Lloyd*, 354 N.C. 76, 113, 552 S.E.2d 596, 622 (2001) (quoting *State v. Cummings*, 353 N.C. 281, 297, 543 S.E.2d 849, 859, *cert. denied*, 534 U.S. 965, 151 L. Ed. 2d 286 (2001)).

The evidence defense counsel was arguing was admitted through Julian Atwood's testimony. During defense counsel's questioning of Atwood on direct examination, the following testimony was elicited:

Q. Mr. Atwood, did you come back to Davidson County, North Carolina voluntarily?

A. No.

Q. Did a New Jersey Court order that you come back for this case?

A. Yes.

Q. Was that after a hearing?

A. Yes.

Even if the trial court erred in sustaining the State's objection to defense counsel's argument, the error was harmless because it appears the essence of the above testimony was allowed in the argument after the objection was sustained. Further, Atwood's testimony was not credible. All of his testimony was related to establishing that McIntyre was the *sole participant* in the murder, testimony which was inconsistent with the testimony from the other witnesses. For instance, Johnny Pierce, the man who purchased the stolen weapons from defendant and McIntyre, testified that he was defendant's friend and that defendant introduced him to McInytre just days before the murder. Further, it was defendant who made contact with Pierce the night the weapons were sold to Pierce, and it was defendant who handled the negotiation and sale of the weapons.

Moreover, the trial court instructed the jury that when the arguments of counsel differed from the evidence presented, the jurors were to "rely solely upon your recollection of the evidence in your deliberations." In view of Atwood's testimony as a whole and the allowed portions of defense counsel's argument, the trial court's decision to limit defense counsel's closing argument was not an abuse of discretion. Accordingly, we hold that the trial court did not err in sustaining the State's objection. This assignment of error is overruled.

[3] In his next assignment of error, defendant contends that the trial court erred in failing to instruct the jury under *Enmund v. Florida*,

458 U.S. 782, 73 L. Ed. 2d 1140 (1982) and *Tison v. Arizona*, 481 U.S. 137, 95 L. Ed. 2d 127 (1987). In *Enmund*, the United States Supreme Court precluded the death penalty for a defendant convicted of first-degree murder who neither killed nor intended the killing. When addressing the Supreme Court's holding in *Enmund*, this Court has stated:

> "[T]he Eighth Amendment forbids the imposition of the death penalty on a defendant who aids and abets in the commission of a felony in the course of which a murder is committed by others, when the defendant does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed."

*Fletcher*, 354 N.C. at 479, 555 S.E.2d at 549 (quoting *State v. McCollum*, 334 N.C. 208, 223, 433 S.E.2d 144, 151 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994)).

In *Tison v. Arizona*, the Supreme Court further interpreted its holding in *Enmund* by concluding that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." 481 U.S. at 158, 95 L. Ed. 2d at 145. "[N]o *Enmund/Tison* instruction is required when a defendant is convicted of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule." *Fletcher*, 354 N.C. at 479, 555 S.E.2d at 549; *see also State v. Robinson*, 342 N.C. 74, 88, 463 S.E.2d 218, 226 (1995), *cert. denied*, 517 U.S. 1197, 134 L. Ed. 2d 793 (1996).

Defendant argues that the trial court was required to give the *Enmund/Tison* instruction notwithstanding the fact that he was convicted of first-degree murder under the theory of premeditation and deliberation as well as under the felony murder rule. Specifically, defendant argues that there is a possibility that he could have been convicted of premeditated first-degree murder without the jury finding that he *intended* to kill the victim. Defendant further contends that this Court's holding in *Fletcher* is inapplicable to this case because the finding of premeditated murder in this case could have been based on a finding that defendant acted in concert.

Here, the State's evidence portrayed defendant as an actor in concert, and the jury was given an acting in concert instruction. By contrast, in *Fletcher*, the jury found the defendant guilty of premeditated first-degree murder under circumstances where the jury was not

given an instruction on acting in concert. 354 N.C. at 480, 555 S.E.2d at 550.

In the case *sub judice*, the trial court's acting in concert instruction prevented the jury from concluding that defendant committed premeditated first-degree murder without also finding that defendant *intended* to kill the victim. In pertinent part, the trial court instructed the jury:

> [I]f you find from the evidence beyond a reasonable doubt that on or about the alleged date *the defendant either by himself or acting with another intentionally killed* the victim with a deadly weapon and that this proximately caused the victim's death, *and that the defendant intended to kill the victim*, and that he acted with malice and premeditation and with deliberation, it would be your duty to return a verdict of first-degree murder on the basis of malice, premeditation, and deliberation. However, if you do not so find or have a reasonable doubt as to one or more of these things, you would not return a verdict of guilty of first-degree murder on the basis of malice, premeditation, and deliberation.

(Emphasis added.)

Because the jury instructions explicitly required, for a finding of first-degree murder on the basis of premeditation and deliberation, that defendant, alone or acting with another, "*intentionally* killed the victim," it would have been most improbable and in clear contravention of the instructions for the jury to have found defendant guilty under the premeditation and deliberation theory without also concluding that "defendant intended to kill the victim." The jury is presumed to have followed the trial court's instructions. *See State v. Cummings*, 352 N.C. 600, 623, 536 S.E.2d 36, 53 (2000), *cert. denied*, 532 U.S. 997, 149 L. Ed. 2d 641 (2001).

Finally, defendant argues that during closing argument, the prosecutor improperly argued the meaning of "acting in concert." Defendant suggests that the prosecutor's argument on acting in concert could have allowed the jury to find that defendant was guilty of premeditated first-degree murder without also finding that defendant *intended* to murder the victim. The prosecutor argued to the jury as follows:

> [F]or a person to be guilty of a crime, it is not necessary that he, himself, do all of the acts necessary to constitute the crime. If two or more persons join in a purpose to commit robbery with a

STATE v. WATTS

[357 N.C. 366 (2003)]

dangerous weapon, felony breaking or entering, each of them if actually or constructively present is not only guilty of that crime . . . but he is also guilty of any other crime committed by the other in the pursuance of the common purpose . . . as a natural or probable consequence thereof.

Defendant made no objection to this argument at trial. While this Court will review a prosecutor's argument even though no objection was made at trial, there must be gross impropriety in order for this Court to hold that the trial court erred by failing to intervene *ex mero motu*. *Carroll*, 356 N.C. at 536, 573 S.E.2d at 906; *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979).

In the instant case, any possible confusion created by the prosecutor's closing argument was rendered harmless by the trial court's instructions. The instructions conformed to the requirements of *Enmund* by requiring the jury to find that defendant "intend[ed] to kill" the victim. 458 U.S. at 798, 73 L. Ed. 2d at 1152. Moreover, this Court can presume that the jury followed the trial court's instructions. *See Barden*, 356 N.C. at 381-82, 572 S.E.2d at 149; *State v. Jennings*, 333 N.C. 579, 618, 430 S.E.2d 188, 208, *cert. denied*, 510 U.S. 1028, 126 L. Ed. 2d 602 (1993).

Accordingly, defendant's argument that he was entitled to an instruction under *Enmund* and *Tison* is without merit. This assignment of error is overruled.

**[4]** In his next assignment of error, defendant argues that the failure of the murder indictment to allege any aggravating circumstance was a jurisdictional defect requiring that his death sentence be vacated and a sentence of life imprisonment without parole be imposed. We considered and rejected this argument recently in *State v. Hunt*, 357 N.C. 257, 582 S.E.2d 593 (2003). Accordingly, this assignment of error is overruled.

**[5]** In defendant's final assignment of error, he argues that the trial court erred in failing to submit to the jury and to instruct the jury on the (f)(4) mitigator. *See* N.C.G.S. § 15A-2000(f)(4) (2001) ("The defendant was an accomplice in or accessory to the capital felony committed by another person and his participation was relatively minor."). Specifically, defendant contends that the testimony of defense witness Julian Atwood supported submission of the (f)(4) mitigating circumstance. Based upon our review of the record, we disagree.

Defendant concedes that he did not request the submission of this circumstance at trial. However, a trial court has no discretion in determining whether to submit a mitigating circumstance when "substantial evidence" in support of the circumstance has been presented. *Fletcher*, 354 N.C. at 477, 555 S.E.2d at 547; *State v. Skipper*, 337 N.C. 1, 44, 446 S.E.2d 252, 276 (1994), *cert. denied*, 513 U.S. 1134, 130 L. Ed. 2d 895 (1995). The test for determining if the evidence is "substantial evidence" is " 'whether a juror could reasonably find that the circumstance exists based on the evidence.' " *State v. Kemmerlin*, 356 N.C. 446, 478, 573 S.E.2d 870, 892 (2002) (quoting *State v. Fletcher*, 348 N.C. 292, 323, 500 S.E.2d 668, 686 (1998), *cert. denied*, 525 U.S. 1180, 143 L. Ed. 2d 113 (1999)). The defendant bears the burden of producing "substantial evidence" of a circumstance before its submission to the jury is proper. *State v. Holmes*, 355 N.C. 719, 736, 565 S.E.2d 154, 166-67, *cert. denied*, —— U.S. ——, 154 L. Ed. 2d 412 (2002); *State v. Rouse*, 339 N.C. 59, 100, 451 S.E.2d 543, 566 (1994), *cert. denied*, 516 U.S. 832, 133 L. Ed. 2d 60 (1995).

"In order to be entitled to an instruction on [(f)(4)], it is necessary that there be evidence tending to show (1) that defendant was an accomplice in or an accessory to the capital felony committed by another, and (2) that his participation in the capital felony was relatively minor." *State v. Stokes*, 308 N.C. 634, 656, 304 S.E.2d 184, 197 (1983). At trial, Atwood testified that McIntyre admitted to being the sole participant in the murder of the victim and that defendant's participation was limited to the break-in and armed robbery. Atwood further testified that McIntyre stated that he had given defendant the idea that they were only going to steal the weapons, although McIntyre had always planned to "shut this lady [the victim] up."

Several disinterested witnesses discredited Atwood's testimony that McIntyre was the sole actor in the murder of the victim. Tanya Gentry, defendant's sister, testified that when defendant arrived at her home on the day of the murder, he was covered in blood in a way that made it appear that he had "held something up and gutted it." Further, defendant asked Gentry to destroy his bloody clothes. Defendant introduced McIntyre to Johnny Pierce, the man who purchased the stolen weapons from defendant and McIntyre, just days after the murder. Defendant also called Pierce to inform him that they were coming to his house with the weapons. Moreover, defendant handled the negotiation and sale of the weapons to Pierce. Kathy Coleman, defendant's girlfriend, testified that after the murder, defendant gave her the victim's jacket. These disinterested witnesses

presented testimony which was inconsistent with the account of events provided by Atwood.

Based on the evidence, the jury could not reasonably have found that defendant played a "relatively minor" role in the murder of the victim. Therefore, the trial court did not err in not submitting to the jury and instructing the jury on the (f)(4) mitigating circumstance. This assignment of error is overruled.

[6] In an additional argument, not formally designated as an issue for review by this Court, defendant asserts a potential claim for ineffective assistance of counsel (IAC). Defendant bases his argument on defense counsel's failure to present any mitigating evidence during the sentencing phase. Defendant asserts that his IAC claim cannot be presented adequately on direct appeal because information necessary to develop this claim is outside the record. Specifically, defendant contends that he would need to look at all mitigating evidence which was obtained by defense counsel, as well as mitigating evidence that was reasonably available yet not acquired by defense counsel.

In *State v. Long*, 354 N.C. 534, 540, 557 S.E.2d 89, 93 (2001), this Court previously addressed this issue and concluded that a defendant is not required to raise an IAC claim on direct appeal in all situations. Further, "given the nature of IAC claims, 'defendants likely will not be in a position to adequately develop many IAC claims on direct appeal.' " *Id.* (quoting *State v. Fair*, 354 N.C. 131, 167, 557 S.E.2d 500, 525 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002)).

Based upon our review of the record as it relates to this issue, it does appear there are evidentiary issues which may need to be developed before defendant will be in a position to adequately raise his potential IAC claim. Accordingly, we hold that defendant's IAC claim has not been waived by his failure to raise the issue before this Court on direct appeal.

## PRESERVATION ISSUES

Defendant raises additional issues which he concedes have been previously decided contrary to his position by this Court: (1) the trial court erred by trying defendant for first-degree murder under the short-form indictment, (2) the trial court erred in its jury instructions on defendant's burden of proof as to mitigating circumstances, (3) the trial court erred in giving a jury instruction allowing the jury to determine whether the nonstatutory mitigating circumstances

found to exist had mitigating value, (4) the trial court erred in its jury instructions on Issues Three and Four which did not require jurors to consider mitigating circumstances found in Issue Two, (5) the trial court's instructions on (e)(9) were unconstitutionally vague and overbroad, and (6) North Carolina's death penalty scheme is unconstitutional.

Defendant raises these issues for the purpose of permitting this Court to reexamine its prior holdings and also for the purpose of preserving them for possible further judicial review of this case. We have considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. These assignments of error are overruled.

## PROPORTIONALITY REVIEW

[7] Having concluded that defendant's trial and capital sentencing proceeding were free of prejudicial error, we must now review the record and determine: (1) whether the evidence supports the aggravating circumstances found by the jury and upon which the sentencing court based its sentence of death; (2) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factor; and (3) whether the sentence is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2). After a thorough review of the transcript, record on appeal, briefs, and oral arguments of counsel, we are convinced that the evidence supported the jury's finding of the three aggravating circumstances submitted. We further conclude that nothing in the record suggests that defendant's death sentence was imposed under the influence of passion, prejudice or any other arbitrary factor. We therefore turn to our final statutory duty of proportionality review.

We must determine whether the imposition of the death penalty in defendant's case is proportionate, looking at both the defendant and the crime. *See State v. Robinson*, 336 N.C. 78, 133, 443 S.E.2d 306, 334 (1994), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 650 (1995). The jury found the existence of three aggravating circumstances: (1) the murder was committed to avoid a lawful arrest, N.C.G.S. § 15A-2000(e)(4); (2) the murder was committed while defendant was engaged in the commission of a robbery, N.C.G.S. § 15A-2000(e)(5); and (3) the murder was especially heinous, atrocious or cruel, N.C.G.S. § 15A-2000(e)(9).

The trial court submitted two statutory mitigating circumstances; however, the jury found the existence of only one: the "catchall" circumstance, which includes "[a]ny other circumstance arising from the evidence which the jury deems to have mitigating value." N.C.G.S. § 15A-2000(f)(9). The trial court also submitted five nonstatutory mitigating circumstances, and the jury found the existence of all five: (1) defendant did not resist arrest when he was arrested without an arrest warrant, (2) defendant allowed officers to search his car when he was arrested without an arrest warrant, (3) defendant helped officers recover evidence of his crimes, (4) defendant did not have a history of significant violent behavior, and (5) defendant came from a dysfunctional family.

In our proportionality review, we begin by comparing this case to those cases where this Court has determined that the sentence of death was disproportionate. This Court has found the death penalty disproportionate in eight cases: *Kemmerlin*, 356 N.C. 446, 573 S.E.2d 870; *Benson*, 323 N.C. 318, 372 S.E.2d 517; *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); and *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

This case is not substantially similar to any case in which this Court has found the death penalty disproportionate. First, defendant was convicted on the basis of malice, premeditation and deliberation and under the felony murder rule. " 'The finding of premeditation and deliberation indicates a more cold-blooded and calculated crime.' " *State v. Haselden*, 357 N.C. 1, 30, 577 S.E.2d 594, 612 (2003) (quoting *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990)). Further, this Court has repeatedly noted that " 'a finding of first-degree murder based on theories of premeditation and deliberation and of felony murder is significant.' " *Carroll*, 356 N.C. at 555, 573 S.E.2d at 917 (quoting *State v. Bone*, 354 N.C. 1, 22, 550 S.E.2d 482, 495 (2001), *cert. denied*, 535 U.S. 940, 152 L. Ed. 2d 231 (2002)).

In the present case, defendant was also convicted of additional crimes against the victim: felonious breaking and entering of her

home and robbery with a dangerous weapon. This Court has determined that two of the aggravating circumstances found, (e)(5) and (e)(9), standing alone, are sufficient to sustain death sentences. *See Haselden*, 357 N.C. at 30, 577 S.E.2d at 612; *State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995).

It is also proper for this Court to compare this case to those cases where we have found the death penalty to be proportionate. *State v. Williams*, 355 N.C. 501, 591, 565 S.E.2d 609, 661 (2002), *cert. denied*, —— U.S. ——, 154 L. Ed. 2d 808 (2003). Although this Court reviews all of the cases in the pool when engaged in our duty of proportionality review, we have repeatedly stated that we will not discuss or cite each of these cases every time we carry out this duty. *Haselden*, 357 N.C. at 31, 577 S.E.2d at 613; *State v. Gregory*, 348 N.C. 203, 213, 499 S.E.2d 753, 760, *cert. denied*, 525 U.S. 952, 142 L. Ed. 2d 315 (1998). It suffices to say here that we conclude that the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which juries have consistently returned recommendations of life imprisonment.

Finally, the similarity of the cases is not the last word on the subject of proportionality. *State v. Wiley*, 355 N.C. 592, 642, 565 S.E.2d 22, 55 (2002), *cert. denied*, —— U.S. ——, 154 L. Ed. 2d 795 (2003); *State v. Daniels*, 337 N.C. 243, 287, 446 S.E.2d 298, 325 (1994), *cert. denied*, 513 U.S. 1135, 130 L. Ed. 2d 895 (1995). Similarity "merely serves as an initial point of inquiry." *Daniels*, 337 N.C. at 287, 446 S.E.2d at 325. Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *Haselden*, 357 N.C. at 31, 577 S.E.2d at 613 (quoting *State v. Green*, 336 N.C. 142, 198, 443 S.E.2d 14, 47, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994)).

Based upon the foregoing and the entire record in this case, we cannot conclude as a matter of law that the sentence of death was excessive or disproportionate. We hold that defendant received a fair trial and capital sentencing proceeding, free of prejudicial error.

NO ERROR.