# FEDERAL COURT

## No. 237
### TUMEY v. STATE
U. S. Supreme Court

No. 527. Decided March 8, 1927

For full syllabus of this opinion, see 5 Abs. 159.

TAFT, C. J.

Ed. Tumey was arrested and charged with the unlawful possession of intoxicating liquors, upon a warrant issued by the Mayor of North College Hill. The Mayor has authority under the Code, which was exercised in this case to order that the person sentenced to pay a fine shall remain in prison till the fine and costs are paid. Part of these fines were reserved to pay enforcement officers and the Mayor was to receive, in addition to his regular salary, his costs out of the fund.

The counsel for the State in their brief explain the vesting by State legislatures of this county, of jurisdiction in village courts, upon the ground that they were designed to break up outlawry which existed just outside of city limits, that the cities were so lax in their enforcement; that law abiding citizens, in order to have a court that would so enforce the law, the legislature gave the Mayors county wide jurisdiction, that the method of fee splitting was to stimulate the activities of such officers in enforcement.

There was a division of public sentiment in the village in relation to the liquor court continuing, and a petition was gotten up by a majority of the voters opposing it, to which the Mayor answered "that as long as the village was in need of financial assistance, he would carry on the court and it appears that substantial sums were expended out of the fund for improvements. The Mayor was an owner of a house in the village. The Supreme Court held:

1. That officers, acting in a judicial or quasijudicial capacity, are disqualified by their interest in the controversy to be decided, is the general rule. Gregory v. Railroad, 4 OS. 675.

2. All judicial qualifications may not involve constitutional validity. Thus matters of kinship, personal bias, etc. would be matters merely of legislative discretion.

3. "But it certainly violates the 14th amendment, and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case."

4. Counsel for State contend, that in the economy which it is found necessary to maintain in the administration of justice in the inferior courts, the only compensation which the state can afford is the fees and costs earned by them, and that such compensation is so small that it will not influence an officer even though he receive nothing if defendant is not convicted.

5. We have been referred to no cases in the English Common Law, prior to the separation of the Colonies which allowed such practice. In fact it is very clear that the slightest pecuniary interest of any officer, rendered the decision voidable.

6. The strict common law rule was adopted in this country, as one to be enforced where nothing but the common law controlled, and citizens and taxpayers have been held incompetent to sit in suits against the municipal corporation of which they have been residents.

7. With other courts however, and with the legislature, the strict rule seemed to be inconvenient, impracticable and unnecessary, and the view taken was that such remote or minute interest in the litigation might be declared by the Legislature not to be a reason for disqualification of a judge or juror. Thomas v. Mt. Vernon, 9 O. 290.

8. From this review we conclude that such a system has not become so embodied by custom in the general practice, either at common law in this country, that it can be regarded as due process of law, unless the costs usually imposed are so small that they may be properly ignored as within the maxim, "de minimis non curat lex."

9. These are not cases in which the penalties and the costs of jurisdiction are negligible. The field is not that of a small community engaged in enforcing its own legal regulations. The court is a state agency imposing substantial punishment, and the cases to be considered are gathered from the whole county by the energy of the village marshals and detectives regularly employed by the village for the purpose. It is not to be treated as a mere village tribunal for village peccadilloes.

10. Every procedure which would offer a possible temptation to the average man as a judge, to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance, nice, clear and true, between the State and the accused, denies the latter due process of law.

11. But the pecuniary interest of the mayor in the result of his judgment is not the only reason for holding that due process of law is denied to the defendant here. The statutes were drawn to stimulate small municipalities in the country part of counties in which there are large cities, to organize and maintain courts to try persons accused of violations of Prohibition Act every where in the county.

12. It specifically authorizes the village to employ detectives, deputy marshals and other assistants to detect crime of this kind all over the county, and to bring offenders before the mayor's court, and it offers to the village council and its officers a means of substantially adding to the income of the village to relieve it from further taxation. The mayor is the chief executive of the village. He supervises all the other executive officers. He is charged with the business of looking after the finances of the village. It appears from the evidence in this case, and would be plain if the evidence did not show it, that the law is calculated to awaken the interest of all those in the village charged with the responsibility of raising the public money and expending it, in the pecuniarily successful conduct of such a court.

13. It is finally argued that the evidence shows clearly that the defendant was guilty and that he was fined only $100, which was the minimum amount, and, therefore he cannot complain of a lack of due process, either in his conviction or in the amount of the judgment. The plea was not guilty and he was convicted. No matter what the evidence was against him, he had the right to have an impartial judge. He seasonably raised the objection and was entitled to halt the trial, because of the disqualification of the judge, which existed both because of his official motive to convict and to graduate the fine to help the financial needs of the village. There were thus presented at the outset both features of the disqualification.

14. The judgment of the Supreme Court of Ohio must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Judgment reversed.

Attorneys—W. B. Wheeler for State; E. P. Moulinier of Cincinnati for Tumey.