STATE OF NORTH CAROLINA v. ALEXANDER CHARLES POLKE

No. 412A05

(Filed 15 December 2006)

## 1. Sentencing— jury selection—question concerning relative cost of punishments

The trial court did not abuse its discretion at a capital sentencing proceeding by denying defendant's pretrial motion to ask prospective jurors whether they had formed a belief about the relative cost of life imprisonment versus the cost of execution. Defendant was allowed to ask this question after renewing the motion during jury selection.

**2. Sentencing— capital—mitigating circumstance—request by defendant—invited error**

The trial court in a capital sentencing proceeding did not commit plain error by instructing jurors on the mitigating circumstance of no significant history of prior criminal activity (N.C.G.S. § 15A-2000(f)(1)). The defendant requested the instruction and invited any error; the doctrine of invited error cannot apply when this instruction is erroneously withheld at defendant's request (because the jurors then consider fewer mitigating factors than required by N.C.G.S. § 15A-2000(b)), but it applies when the trial court erroneously submits the mitigating circumstance at defendant's request.

**3. Sentencing— mitigating circumstances—emotional disturbance and impaired capacity from pepper spray—not submitted—insufficient evidence**

The trial court in a capital sentencing proceeding did not commit plain error by not submitting the mitigating circumstances that defendant was under the influence of mental or emotional disturbance (N.C.G.S. § 15A-2000(f)(2)) and that his capacity to appreciate the criminality of his conduct was impaired (N.C.G.S. § 15A-2000(f)(6)) after he was subjected to pepper spray. Defendant did not call any witnesses on his behalf at sentencing and did not present any additional evidence concerning the effect of pepper spray on him, while the State's evidence tended to show that defendant shot a deputy to evade arrest, although he was angry about being sprayed.

**4. Sentencing— aggravating circumstances—failure to submit—no structural error**

There was no structural error in a capital sentencing proceeding in the failure to submit the aggravating circumstance that defendant was engaged in the commission or attempt to commit a homicide (N.C.G.S. § 15A-2000(e)(5)). The error cited by defendant is not similar in type or degree to the group of errors that the United States Supreme Court has determined to be structural.

**5. Sentencing— prosecutor's argument—no mercy—intervention ex mero motu not required**

There was no plain error in a capital sentencing proceeding where the court did not intervene ex mero motu when the prose-

cutor argued to the jurors that their decision should not be motivated by mercy but by the evidence and the law.

## 6. Sentencing— death—proportionality

A death sentence for a defendant who murdered a law enforcement office to evade arrest was proportionate where the evidence supported the three aggravating circumstances which were found, the sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor, and the case was not substantially similar to any case in which a death penalty was found disproportionate.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Judge Steve A. Balog on 7 February 2005 in Superior Court, Randolph County, following defendant's plea of guilty to first-degree murder. Heard in the Supreme Court 12 September 2006.

*Roy Cooper, Attorney General, by William B. Crumpler, Assistant Attorney General, for the State.*

*Staples S. Hughes, Appellate Defender, by Barbara S. Blackman, Assistant Appellate Defender, for defendant-appellant.*

WAINWRIGHT, Justice.

On 27 April 2003, defendant Alexander Charles Polke fatally shot Randolph County Sheriff's Deputy Toney Clayton Summey (Deputy Summey) in the neck and abdomen at close range. At the time of the shooting, Deputy Summey and Deputy Nathan Hollingsworth were on the front porch of defendant's home attempting to serve warrants for defendant's arrest. Defendant resisted and shot Deputy Summey with his own service pistol during the ensuing struggle. Defendant next shot and injured Deputy Hollingsworth, who was able to take cover behind his vehicle. Defendant surrendered at the scene to Deputy Lieutenant Johnnie Hussey, who responded to a call for assistance from Deputy Hollingsworth. While repeatedly telling Lieutenant Hussey that Deputy Summey had used pepper spray on him, defendant angrily stated, "[H]e shouldn't have pepper sprayed me," and asked, "Why did he pepper spray me"? While being transported to the Randolph County Sheriff's Department, defendant further stated: "I shouldn't have shot him[;] he was just doing his job."

A Randolph County Grand Jury indicted defendant for first-degree murder on 5 May 2003, and defendant pleaded guilty to the

first-degree murder charge on 31 January 2005. A capital sentencing proceeding was held at the 31 January 2005 Criminal Session of Superior Court, Randolph County, during which defendant called no witnesses and presented no evidence. On 7 February 2005, the sentencing jury returned its verdict, finding three aggravating factors and no mitigating factors, and recommending a capital sentence. Judge Steve A. Balog sentenced defendant to death by order dated that same day.

Additional relevant facts will be provided when necessary to resolve the issues on appeal.

Defendant raises nine assignments of error on appeal. Four assignments concern questions of law that have previously been determined by this Court. Defendant raises these arguments for purposes of preservation. The five remaining assignments of error concern defendant's capital-sentencing proceeding: (1) whether the trial court abused its discretion by denying defendant's pretrial motion to question prospective jurors about the relative cost of executions versus life imprisonment, (2) whether the trial court committed plain error by submitting the N.C.G.S. § 15A-2000(f)(1) mitigating factor to the jury, (3) whether the trial court committed plain error by failing to submit the N.C.G.S. § 15A-2000(f)(2) and (f)(6) mitigating factors to the jury, (4) whether the trial court committed structural error by failing to submit the N.C.G.S. § 15A-2000(e)(5) aggravating factor to the jury, and (5) whether the trial court committed plain error by failing to intervene *ex mero motu* during the State's closing argument.

## PRETRIAL MOTIONS

[1] First, defendant argues that the trial court abused its discretion by denying his pretrial motion to ask prospective jurors whether they had formed a belief about the relative cost of life imprisonment versus the cost of execution. Defendant contends that the question was necessary to ensure an impartial jury. We note that the trial court did, in fact, permit defendant to ask this question after defendant renewed his motion during jury selection. In so doing, the trial court asked defense counsel whether he was making a strategic decision to raise this issue, which the prospective jurors may not previously have thought about and which is improper for jurors to consider in a capital case. When defense counsel confirmed that he wanted to ask the question, the court allowed counsel's renewed motion.

Trial courts have broad discretionary power to regulate the manner and extent of jury *voir dire*. *State v. Rogers*, 316 N.C. 203, 218,

341 S.E.2d 713, 722 (1986), *overruled in part on other grounds by State v. Gaines*, 345 N.C. 647, 676-77, 483 S.E.2d 396, 414, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 573-74, 364 S.E.2d 373, 375-76 (1988). A trial court's discretionary ruling governing *voir dire* will not be overruled on appeal unless it is " 'manifestly unsupported by reason' " or " 'so arbitrary that it could not have been the result of a reasoned decision.' " *State v. T.D.R.*, 347 N.C. 489, 503, 495 S.E.2d 700, 708 (1998) (defining the term "abuse of discretion") (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)); *See also State v. Elliott*, 360 N.C. 400, 409, 628 S.E.2d 735, 742, *cert. denied*, —— U.S. ——, 166 L. Ed. 2d 378 (2006) (applying a clear abuse of discretion standard to the trial court's regulation of *voir dire* questioning). We have recently determined that a trial court did not abuse its discretion by denying a defendant's request to ask an identical question in *State v. Elliott*. 360 N.C. at 409-10, 628 S.E.2d at 742. In *Elliott*, this Court explained that "a trial court's discretion is properly used to ensure that a juror can put aside any personal beliefs in the propriety of capital punishment and recommend a sentence in accordance with the trial court's instructions and the law." *Id.* at 410, 628 S.E.2d at 742 (citations omitted).

After thorough review of the record we are satisfied that defendant was permitted to question jurors about their ability to apply the law as given by the trial court. The trial court did not abuse its discretion in denying defendant's pretrial motion. This assignment of error is overruled.

## CAPITAL SENTENCING PROCEEDING

[2] Second, defendant argues that the trial court committed plain error by instructing jurors on a statutory mitigating circumstance that was not supported by the evidence: "The defendant has no significant history of prior criminal activity." N.C.G.S. § 15A-2000(f)(1) (2005). The record shows that the court decided to submit the (f)(1) mitigating circumstance at defense counsel's request, after substantial discussion between the court, defense counsel, and the district attorney. Now defendant assigns plain error to the trial court's submission of the N.C.G.S. § 15A-2000(f)(1) mitigating circumstance. Defendant argues that evidence of defendant's prior criminal activity was significant and that improper "submission of the [N.C.G.S. § 15A-2000(f)(1) mitigating] factor skews the entire deliberative process" because "[a] jury improperly presented with the (f)(1) miti-

gating factor may view all [mitigating] factors submitted with cynicism and skepticism and conclude they are unworthy of belief."

In a capital case, mitigating circumstances extenuate or reduce a defendant's moral culpability for a first-degree murder, making the crime less deserving of a capital sentence. *State v. Irwin*, 304 N.C. 93, 104, 282 S.E.2d 439, 446-47 (1981). The North Carolina General Assembly has determined that certain facts, including that a defendant has no significant history of prior criminal activity, have mitigating value as a matter of law. N.C.G.S. § 15A-2000(f) (2005); *State v. Wilson*, 322 N.C. 117, 143-44, 367 S.E.2d 589, 604-05 (1988). Once a mitigating circumstance is found by the jury to exist, jurors must determine the degree to which the circumstance mitigates the crime. N.C.G.S. § 15A-2000(b) (2005). It is not appropriate for jurors to assign no weight to an existing statutory mitigating circumstance. *State v. Howell*, 343 N.C. 229, 240, 470 S.E.2d 38, 44 (1996).

If a defendant produces substantial evidence supporting the (f)(1) mitigating circumstance, the trial judge must submit this circumstance to the jury. N.C.G.S. § 15A-2000(b); *State v. Daniels*, 337 N.C. 243, 272-73, 446 S.E.2d 298, 316 (1994), *cert. denied*, 513 U.S. 1135, 130 L. Ed. 2d 895 (1995). This is true even when the defendant objects to its submission. *State v. Hurst*, 360 N.C. 181, 194, 624 S.E.2d 309, 320, *cert. denied*, —— U.S. ——, 166 L. Ed. 2d 131 (2006). By ensuring that jurors consider all relevant mitigating evidence, N.C.G.S. § 15A-2000(f) thereby protects a capital defendant's right to individualized sentencing. *Kansas v. Marsh*, —— U.S. ——, ——, 165 L. Ed. 2d 429, 440 (2006).

N.C.G.S. § 15A-2000(b) provides:

> In all cases in which the death penalty may be authorized, the judge <u>shall</u> include in his instructions to the jury that it <u>must</u> consider any aggravating circumstance or circumstances or mitigating circumstance or circumstances from the lists provided in subsections (e) and (f) which may be supported by the evidence, and shall furnish to the jury a written list of issues relating to such aggravating or mitigating circumstance or circumstances.

N.C.G.S. § 15A-2000(b) (emphases added). Because the language of N.C.G.S. § 15A-2000(b) is mandatory, this Court recently determined that "the doctrine of invited error cannot apply when the [(f)(1)] instruction is [erroneously] <u>withheld</u> at the defendant's request." *Hurst*, 360 N.C. at 194, 624 S.E.2d at 320 (emphasis added). When the

(f)(1) instruction is erroneously withheld, jurors consider <u>fewer</u> mitigating factors than required by N.C.G.S. § 15A-2000(b), and the defendant does not receive the full benefit of all relevant mitigating evidence presented on his behalf. Correspondingly, when the (f)(1) circumstance is erroneously <u>submitted</u> at defendant's request, jurors are presented with <u>more</u> mitigating factors than required by N.C.G.S. § 15A-2000(b). The latter error does not violate the mandate of N.C.G.S. § 15A-2000(b) because the jury considers every mitigating circumstance supported by substantial evidence. Accordingly, we conclude that the doctrine of invited error does apply when the trial court erroneously submits the N.C.G.S. § 15A-2000(f)(1) mitigating factor at defendant's request.

N.C.G.S. § 15A-1443(c) provides that "[a] defendant is not prejudiced by . . . error resulting from his own conduct." N.C.G.S. § 15A-1443(c) (2005). Here, defendant requested that the trial court instruct the jury on the N.C.G.S. § 15A-2000(f)(1) mitigating circumstance. For this reason, we conclude that defendant invited any error resulting from submission of the N.C.G.S. § 15A-2000 (f)(1) mitigating circumstance to the jury. This assignment of error is overruled.

[3] Third, defendant argues that the trial court committed plain error by failing to submit two statutory mitigating circumstances that were supported by the evidence. Defendant contends that evidence tending to show he shot Deputy Summey in response to being sprayed with pepper spray was sufficient to support the N.C.G.S. § 15A-2000(f)(2) and (f)(6) mitigating circumstances. N.C.G.S. § 15A-2000(f)(2) states that "[t]he capital felony was committed while the defendant was under the influence of mental or emotional disturbance," and N.C.G.S. § 15A-2000 (f)(6) states that "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired." Defendant argues that the pain and disabling effects caused by the pepper spray resulted in a mental or emotional disturbance and impaired his mental capacity during the shooting. After examining the evidence presented during sentencing, we determine that the trial court did not commit plain error by choosing not to submit these mitigating circumstances to the jury.

A trial court must instruct the jury on every statutory mitigating circumstance that is supported by substantial evidence. *Id.* § 15A-2000(b); *State v. Lloyd*, 321 N.C. 301, 311-12, 364 S.E.2d 316, 323, *judgment vacated on other grounds*, 488 U.S. 807, 102 L. Ed. 2d 18 (1988). This is true even when the defendant fails to request the

instruction or objects to its submission. *State v. Watts*, 357 N.C. 366, 377, 584 S.E.2d 740, 748 (2003), *cert. denied*, 541 U.S. 944, 158 L. Ed. 2d 370 (2004). Substantial evidence is evidence from which "a juror could reasonably find that the circumstance exists." *Id.* (citations and internal quotation marks omitted). Defendant carries the burden to produce substantial evidence that a mitigating circumstance exists, *id.*, and mere speculation or conjecture is not sufficient to satisfy this requirement. *State v. Anderson*, 350 N.C. 152, 183, 513 S.E.2d 296, 315, *cert. denied*, 528 U.S. 973, 145 L. Ed. 2d 326 (1999).

Upon submission of the N.C.G.S. § 15A-2000(f)(2) mitigating circumstance, jurors must consider whether "[t]he capital felony was committed while the defendant was under the influence of mental or emotional disturbance." N.C.G.S. § 15A-2000(f)(2). "Although expert testimony is not always necessary to support a finding of this [N.C.G.S. § 15A-2000(f)(2)] mitigator, the absence of such testimony may be considered when determining whether the (f)(2) mitigator is supported by substantial evidence." *State v. Strickland*, 346 N.C. 443, 463, 488 S.E.2d 194, 206 (1997) (citation omitted), *cert. denied*, 522 U.S. 1078, 139 L. Ed. 2d 757 (1998). "Sheer anger or the inability to control one's temper 'is neither mental nor emotional disturbance as contemplated by this mitigator.' " *State v. Braxton*, 352 N.C. 158, 531 S.E.2d 428 (2000) (quoting *Strickland*, 346 N.C. at 464, 488 S.E.2d at 206), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001).

Upon submission of the N.C.G.S. § 15A-2000(f)(6) mitigating circumstance, jurors must consider whether "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired." N.C.G.S. § 15A-2000(f)(6). A defendant's actions after killing the victim may demonstrate that he was aware that his acts were criminal. *State v. Gainey*, 355 N.C. 73, 104, 558 S.E.2d 463, 483, *cert. denied*, 537 U.S. 896, 154 L. Ed. 2d 165 (2002).

The record shows that Deputy Summey's pepper spray canister was seventy-one percent full after the shooting. Defendant repeatedly told Lieutenant Hussey that Deputy Summey had used pepper spray on him, angrily stating "He should not have pepper sprayed me" and asking, "Why did he pepper spray me"? Defendant stated in his confession that he took the deputy's service revolver after the deputy sprayed defendant with pepper spray and while the deputy was attempting to administer more spray. However, Lieutenant Hussey testified during sentencing that he did not detect any sign of pepper spray on defendant when defendant was apprehended. Defendant

did not call any witnesses on his behalf at sentencing and did not present any additional evidence concerning the effect of pepper spray on him personally.

After thorough review of the record, we conclude that the evidence presented by the State tends to show that, although defendant was angry about being sprayed with pepper spray, he shot Deputy Summey for the purpose of evading arrest. Defendant did not produce substantial evidence to support the submission of either mitigating circumstance. For these reasons, the trial court did not err by failing to submit these mitigating circumstances *ex mero motu*. This assignment of error is overruled.

[4] Fourth, defendant argues that the trial court committed structural error by failing to submit an aggravating circumstance to the jury: "The capital felony was committed while the defendant was engaged . . . in the commission of, or an attempt to commit . . . any homicide . . . ." N.C.G.S. § 15A-2000(e)(5) (2005). Defendant contends that this aggravating circumstance was supported by the evidence and that failure to submit it rendered the jury's recommended sentence " 'arbitary and, therefore, unconstitutional,' " citing *State v. Case*, 330 N.C. 161, 163, 410 S.E.2d 57, 58 (1991). Thus, defendant concludes that the assigned error is structural and he is entitled to a new sentencing hearing. We make no decision as to whether the trial court should have submitted the N.C.G.S. § 15A-2000(e)(5) aggravating circumstance in this case; rather, we determine that a trial court's failure to submit an aggravating circumstance is not structural error.

The United States Supreme Court has identified only six instances of structural error to date: (1) complete deprivation of right to counsel, *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799 (1963); (2) a biased trial judge, *Tumey v. Ohio*, 273 U.S. 510, 71 L. Ed. 749 (1927); (3) the unlawful exclusion of grand jurors of the defendant's race, *Vasquez v. Hillery*, 474 U.S. 254, 88 L. Ed. 2d 598 (1986); (4) denial of the right to self-representation at trial, *McKaskle v. Wiggins*, 465 U.S. 168, 79 L. Ed. 2d 122, 104 S. Ct. 944 (1984); (5) denial of the right to a public trial, *Waller v. Georgia*, 467 U.S. 39, 81 L. Ed. 2d 31 (1984); and (6) constitutionally deficient jury instructions on reasonable doubt, *Sullivan v. Louisiana*, 508 U.S. 275, 124 L. Ed. 2d 182 (1993). *See Johnson v. United States*, 520 U.S. 461, 468-69, 137 L. Ed. 2d 718, 728 (identifying the six cases in which the United States Supreme Court has found structural error). The Court has also determined that other, arguably serious, constitutional

errors are subject to harmless error review. *See, e.g., Washington v. Recuenco,* — U.S. —, —, 165 L. Ed. 2d 466, 474-77 (2006) (applying harmless error analysis to a trial court's failure to submit a sentencing factor to the jury); *Neder v. United States,* 527 U.S. 1, 15, 144 L. Ed. 2d 35, 51 (1999) (applying harmless error analysis to a trial court's omission of an element of the offense from the jury charge); *Arizona v. Fulminante,* 499 U.S. 279, 295, 113 L. Ed. 2d 302, 322 (1991) (applying harmless error analysis to trial court's admission of a coerced confession); and *Rose v. Clark,* 478 U.S. 570, 579, 92 L. Ed. 2d 460, 471 (1986) ("Placed in context, the erroneous malice [jury] instruction [at issue] does not compare with the kinds of errors that automatically require reversal of an otherwise valid conviction.") In fact, the United States Supreme Court emphasizes a strong presumption against structural error, *Rose,* 478 U.S. at 579, 92 L. Ed. 2d at 471 ("[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis."); *see Neder,* 527 U.S. at 8, 144 L. Ed. 2d at 46 ("[W]e have found an error to be 'structural,' and thus subject to automatic reversal, only in a 'very limited class of cases.' " (quoting *Johnson,* 520 U.S. at 468, 137 L. Ed. 2d at 728)), and the designation "structural error" is reserved for errors that "necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence," *Neder,* 527 U.S. at 9, 144 L. Ed. 2d at 47 (emphasis omitted).

The error cited by defendant is not similar in type or degree to the group of errors that the United States Supreme Court has determined to be structural. Accordingly, we decline to apply structural error analysis to the trial court's failure to submit an aggravating circumstance. This assignment of error is overruled.

**[5]** Fifth, defendant argues that the trial court committed plain error by failing to intervene *ex mero motu* during the State's closing argument. Defendant contends that the district attorney improperly told jurors that their decision should not be motivated by mercy; rather, jurors should consider the evidence and the law. This Court has previously upheld similar closing arguments in *State v. Hoffman, State v. Bishop,* and *State v. Frye. State v. Hoffman,* 349 N.C. 167, 191, 505 S.E.2d 80, 94 (1998), *cert. denied,* 526 U.S. 1053, 143 L. Ed. 2d 522 (1999); *State v. Bishop,* 343 N.C. 518, 553-54, 472 S.E.2d 842, 861 (1996), *cert. denied,* 519 U.S. 1097, 136 L. Ed. 2d 723 (1997); *State v. Frye,* 341 N.C. 470, 505-06, 461 S.E.2d 664, 682-83 (1995), *cert. denied,* 517 U.S. 1123, 134 L. Ed. 2d 526 (1996). We determine that these pre-

vious decisions govern the issue *sub judice* and that, in context, the district attorney's argument was not grossly improper. This assignment of error is overruled.

## PRESERVATION ISSUES

Defendant has briefed four additional assignments of error for purposes of preservation. These assignments concern questions of law that this Court has previously resolved contrary to defendant's position: (1) whether the trial court subjected defendant to double jeopardy by submitting both the N.C.G.S. § 15A-2000 (e)(4) and (e)(8) aggravating circumstances, (2) whether the trial court committed plain error by instructing the jury pursuant to the North Carolina pattern jury instruction on mitigating circumstances, (3) whether the absence of aggravating circumstances in the indictment deprived the trial court of jurisdiction to enter a death sentence, and (4) whether a short-form indictment is sufficient to charge defendant with first-degree murder. This Court has carefully considered defendant's arguments on these issues and we find no compelling reason to depart from our prior holdings. For this reason, defendant's assignments of error are overruled.

## PROPORTIONALITY

[6] Having found no error in defendant's capital sentencing proceeding, we must now determine: (1) whether the evidence presented during sentencing supports the aggravating circumstances found by the jury, (2) whether the jury's imposition of the death penalty was influenced by "passion, prejudice, or any other arbitrary factor," and (3) whether the death sentence is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2) (2005).

Here, jurors found that three aggravating circumstances existed beyond a reasonable doubt: (1) the murder was committed for the purpose of preventing a lawful arrest, (2) the murder was committed against a law enforcement officer while in the performance of his official duties, and (3) the murder was part of a course of conduct in which the defendant engaged and the course of conduct included the commission by defendant of other crimes of violence against other persons. *Id.* § 15A-2000(e)(4), (e)(8), and (e)(11). The trial court also submitted one statutory and seven nonstatutory mitigating circumstances to the jury for consideration, but jurors did not find any of these mitigating circumstances to exist.

After reviewing the records, transcripts, briefs, and oral arguments, we conclude that the evidence supports the jury's finding of all three aggravating circumstances. Additionally, we conclude, based on a thorough review of the record, that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. Thus, the final statutory duty of this Court is to conduct proportionality review.

The purpose of proportionality review is "to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987) (citing *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Proportionality review also acts "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980), *overruled in part on other grounds by State v. Johnson*, 317 N.C. 193, 203-04, 344 S.E.2d 775, 782 (1986). In conducting proportionality review, we compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994).

We have found the death sentence disproportionate in eight cases. *State v. Kemmerlin*, 356 N.C. 446, 573 S.E.2d 870 (2002); *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate. The evidence shows that defendant murdered a law enforcement officer for the purpose of evading lawful arrest. "[T]he N.C.G.S. § 15A-2000(e)(4) and (e)(8) aggravating circumstances reflect the General Assembly's recognition that 'the collective conscience requires the most severe penalty for those who flout our system of law enforcement.' " *State v. Golphin*, 352 N.C. 364, 487, 533 S.E.2d 168, 247 (2000) (quoting *State v. Brown*, 320 N.C. 179, 230, 358 S.E.2d 1, 33, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987)), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001).

**STATE v. POLKE**

[361 N.C. 65 (2006)]

"The murder of a law enforcement officer *engaged in the performance of his official duties* differs in kind and not merely in degree from other murders. When in the performance of his duties, a law enforcement officer is the representative of the public and a symbol of the rule of law. The murder of a law enforcement officer engaged in the performance of his duties in the truest sense strikes a blow at the entire public—the body politic—and is a direct attack upon the rule of law which must prevail if our society as we know it is to survive."

*State v. Nicholson*, 355 N.C. 1, 72, 558 S.E.2d 109, 155 (quoting *State v. Hill*, 311 N.C. at 488, 319 S.E.2d at 177 (Mitchell (later C.J.), concurring in part and dissenting in part), *cert. denied*, 537 U.S. 845, 154 L. Ed. 2d 71 (2002). Additionally, this Court has never found a death sentence to be disproportionate when the jury found more than two aggravating circumstances to exist, and we have found the N.C.G.S. § 15A-2000 (e)(11) aggravating circumstance, standing alone, sufficient to support a death sentence. *See State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, 513 U.S. 1159, 115 S. Ct. 1120, 130 L. Ed. 2d 1083 (1995).

Although we compare this case with the cases in which this Court has found the death penalty to be proportionate, *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164, "we will not undertake to discuss or cite all of those cases each time we carry out that duty." *Id.*; *accord State v. Gregory*, 348 N.C. 203, 213, 499 S.E.2d 753, 760, *cert. denied*, 525 U.S. 952, 142 L. Ed. 2d 315, (1998). Whether a sentence of death is "disproportionate in a particular case ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *State v. Green*, 336 N.C. 142, 198, 443 S.E.2d 14, 47 (citation omitted), *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994). Based upon the crime defendant committed and the record in this case, we are convinced the sentence of death, recommended by the jury and ordered by the trial court, is not disproportionate or excessive.

Accordingly, we conclude defendant received a fair capital sentencing proceeding, free from prejudicial error. The sentence entered by the trial court is left undisturbed.

NO ERROR.