IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-962

Filed 20 June 2023

Burke County, Nos. 09-CRS-4222-4223, 09-CRS-3910-3912, 11-CRS-1471

STATE OF NORTH CAROLINA

v.

JAMES ALLEN MINYARD

Appeal by defendant from order entered 22 December 2021 by Judge Robert C. Ervin in Burke County Superior Court. Heard in the Court of Appeals 24 May 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Sherri Horner Lawrence, for the State.*

*Wake Forest University School of Law Appellate Advocacy Clinic, by John J. Korzen, for defendant-appellant.*

TYSON, Judge.

This Court allowed James Allen Minyard's ("Defendant") Petition for Writ of *Certiorari* ("PWC") on 12 August 2022 to review the 22 December order of the Burke County Superior Court, allowing in part and denying in part Defendant's motion for appropriate relief ("MAR"). We affirm and remand.

## I. Background

This Court's prior opinion sets forth the facts underlying this case in greater detail. *See State v. Minyard*, 231 N.C. App. 605, 606, 753 S.E.2d 176, 179, *disc. rev. denied*, 367 N.C. 495, 797 S.E.2d 914 (2014) (R. N. Hunter, J.). This Court

unanimously held "the trial court did not err in denying Defendant's motions to dismiss, nor in choosing not to conduct a *sua sponte* competency hearing after Defendant voluntarily intoxicated himself and waived his right to be present during a portion of the proceedings." *Id*. at 627, 753 S.E.2d at 191-92.

Facts pertinent to Defendant's MAR are: Defendant was indicted for first-degree sexual offense and six counts of taking indecent liberties with a minor on 14 September 2009. Defendant was also indicted as attaining habitual felon status on 13 June 2011. The cases proceeded to trial on 13 August 2012. The trial court dismissed one count of taking indecent liberties with a minor and the first-degree sexual offense charge after the close of the State's evidence. The trial court allowed the charge of attempted first-degree sexual offense and the five remaining charges of taking indecent liberties with a minor to proceed to trial. Defendant testified for over thirty-five minutes immediately before the defense rested its case-in-chief on 15 August 2012. After closing arguments, after instructing and submitting the case to the jury, the trial court instructed Defendant to remain inside the courtroom, unless he needed to speak with his attorney, while the jury was deliberating.

The trial court recessed from 2:10 p.m. until 2:38 p.m., when the jury asked for a transcript of the victim's recorded interview. As the trial court was reconvening to bring the jury back into the courtroom, Defendant's counsel informed the trial court that Defendant was "having a little problem." With Defendant present in the courtroom the trial court informed all parties he would respond to the jury's question

by stating no written transcript existed of the victim's interview on the DVD they were shown. The jury returned to their deliberations.

Around this time Defendant was having problems staying "vertical" and the trial court advised as follows:

> [Defendant] you've been able to join us all the way through this. And let me suggest to you that you continue to do that. If you go out on us, I very likely will revoke your conditions of release. I'll order you arrested. We'll call emergency medical services; we'll let them examine you. If you're healthy, you'll be here laid out on a stretcher if need be. If you're not healthy, we will continue on without you, whether you're here or not. So do you very best to stay vertical, stay conscious, stay with us.

The trial court recessed until the jury requested to re-watch the last ten minutes of the DVD. The trial court informed the parties it would allow this request. The trial court resumed proceedings and noted:

> All right, all counsel, all parties are present. Defendant is present, and the Defendant is not - - is in the courtroom but is not joining us at the defense table, and has not come up at the request of the Court. I have a report that he has overdosed. That is, he has taken medication, so much medication that he's at a point where he might not be functioning very well.

A defense witness, Evelyn Gantt, informed the trial court Defendant had consumed eight Alprazolam pills because: "He was just worried about the outcome and I don't know why he took the pills." Defendant was taken into custody and the trial court ordered for him to be examined by emergency medical services. Defendant was led from the courtroom to receive medical attention. Subsequently, the jury had

- 3 -

another question.  Before the jury was brought back into open court,  the trial court allowed both sides an opportunity to be heard.  The trial court found Defendant had disrupted the proceedings by leaving the courtroom against the instructions of trial court and had voluntarily overdosed on drugs, based upon the following findings of facts:

> The Court finds Defendant left the courtroom without his lawyer.
>
> The Court finds that while the jury was in deliberation — the jury had a question concerning an issue in the case — and prior to the jurors being returned to the courtroom for a determination of the question, the Court directed the Defendant to — who was in the courtroom at that point — to return to the Defendant's table with his counsel. Defendant refused, but remained in the courtroom.  The Court permitted that.
>
> The Court noticed that after the question was resolved with the juror, that while the jury was out in deliberations working on Defendant's case, the Defendant took an overdose of Xanax.  While he was here in the courtroom and while the jury was still out in deliberations, Defendant became lethargic and slumped over in the courtroom.
>
> . . . .
>
> The Court finds that outside of the jury's presence the Court noted that Defendant was stuporous and refused to cooperate with the Court and refused reasonable requests by bailiffs.
>
> . . . .
>
> The Court finds that Defendant's conduct on the occasion disrupted the proceedings of the Court and took a substantial amount of time to resolve how the Court should proceed.  The Court finally ordered that Defendant's

conditions of pretrial release be revoked and ordered the Defendant into the custody of the sheriff, requesting the sheriff to get a medical evaluation of the Defendant.

The Court finds that Defendant, by his own conduct, voluntarily disrupted the proceedings in this matter by stopping the proceedings for a period of time so the Court might resolve the issue of his overdose.

The Court notes that the — with the consent of the State and Defendant's counsel that the jurors continued in deliberation and continued to review matters that were requested by them by way of question.

The Court infers from Defendant's conduct on the occasion that it was an attempt by him to garner sympathy from the jurors. However, the Court notes that all of Defendant's conduct that was observable was outside of the jury's presence.

The Court notes that both State and Defendant prefer that the Court not instruct jurors about Defendant's absence. And the Court made no reference to Defendant being absent when jurors came in with response to — or in response to question or questions that had been asked.

When the jury returned to the courtroom, the trial court instructed the jurors Defendant's absence should not be considered in weighing evidence or determining guilt. The trial court allowed the jury's requests to review portions of the victim's interview preserved on the DVD.

A jury found Defendant guilty of five counts of taking indecent liberties with a child, one count of attempted first-degree sexual offense, and of attaining habitual felon status. After the jury entered its verdict, the trial court amended its prior findings after emergency medical services indicated Defendant had purportedly

consumed "fifteen Klonopin" and two forty-ounce alcoholic beverages. Defendant returned to the courtroom the next morning and was present and declined to testify at the habitual felon proceeding and the sentencing phases of the other charges.

Defendant was sentenced to concurrent sentences of 225 to 279 months imprisonment as a habitual felon for the attempted first-degree sexual offense and 121 to 155 months for the five counts of taking indecent liberties with a child on 15 August 2012.

On prior appeal, Defendant's appellate counsel argued, *inter alia*, the trial court erred by not pausing the trial and conducting a *sua sponte* competency hearing when Defendant passed out after ingesting eight Alprazolam or possibly fifteen Clonazepam pills and two forty-ounce alcoholic beverages during a break in the proceedings. On 7 January 2014 this Court filed a unanimous opinion holding no error had occurred at trial. The North Carolina Supreme Court denied Defendant's petition for discretionary review.

Defendant wrote a letter to Superior Court Judge Jerry Cash Martin, which the trial court received on 2 October 2015. Defendant asserted he was a diabetic and he had been temporarily affected by low blood sugar at his trial. Defendant argued "under the 5th, 8th, and 14th amendment[s] the trial should have been stopped and a mental health hearing should have been scheduled at a later date to see if [he] was fit to continue or not." Judge Robert C. Ervin treated Defendant's 2 October 2015 letter as a MAR and denied the MAR by order entered 5 October 2015.

Defendant filed a *pro se*" kitchen sink" second MAR on 24 February 2018 arguing: (1) he was denied a speedy trial; (2) he received ineffective assistance of counsel; (3) the trial court engaged in misconduct by stating Defendant was "drunk and over-dos[ed]" and by failing to conduct a competency hearing; (4) his sentence violated double-jeopardy; (5) a witness for the State committed perjury; (6) prosecutorial misconduct; (7) he was entitled to an instruction on a lesser-included offense; and, (8) he was convicted of an offense that no longer exists. *Jennings v. Sheppard*, 2:21-cv-00449-JFA-MGB (D.S.C. Feb. 22, 2022) (referring to the defendant's MAR as a "kitchen sink").

Judge Ervin denied Defendant's MAR by order entered 21 March 2018 holding, *inter alia*, Defendant had failed to establish he was prejudiced by being voluntarily absent from a portion of his trial. This Court denied Defendant's PWC by order entered 24 January 2019. The Supreme Court of North Carolina denied Defendant's PWC by order entered 1 April 2020.

Defendant filed yet another MAR in Burke County Superior Court on 21 May 2021. Defendant asserted he was entitled to a new trial based on the Supreme Court of North Carolina's opinion in *State v. Sides*, 376 N.C. 449, 852 S.E.2d 170 (2020). Defendant argued the trial court erred by failing *sua sponte* to inquire, without motion or inquiry from counsel, into his competency after he purportedly fell into a stupor during jury deliberations due to overdosing on benzodiazepines. Judge Ervin requested briefing on four issues: (1) whether *Sides* applies to this case; (2) if so,

whether *Sides* is legally distinguishable; (3) if not, whether the trial court's actions constituted a competency hearing; and, (4) if not, whether Defendant has to show the trial court's failure to hold a competency hearing prejudiced him. The trial court appointed counsel for Defendant and held a hearing on the MAR on 20 December 2021.

Judge Ervin entered an order allowing in part and denying in part the MAR on 22 December 2021. Judge Ervin concluded the trial court's failure to conduct a competency proceeding prior to the habitual felon and sentencing phases was prejudicial error and vacated Defendant's habitual felon verdict. Judge Ervin held, although *Sides* applied to Defendant's case and substantial evidence could raise a *bona fide* doubt of Defendant's competency, "[t]he failure to conduct a *sua sponte* capacity evaluation was harmless error in th[at] portion of the proceeding [after jury deliberations had begun]" and denied Defendant's claim for a new trial.

Defendant filed another PWC on 26 May 2022. This Court allowed Defendant's PWC to review Judge Ervin's 22 December 2021 order denying in part Defendant's MAR. The State did not cross-appeal nor seek further review of the order.

## II.    Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 15A-1422(c)(3), 7A-32(c) (2021) and N.C. R. App. P. 21(a).

## III.    Issues

Defendant argues the trial court erred in denying him a new trial based upon

*Sides*, and also holding the trial court's error did not occur during a "critical phase" of trial, and is subject to harmless error review.

## IV.    Award of a New Trial

### A. Standard of Review

This Court reviews a trial court's ruling on a MAR "to determine whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court." *State v. Stevens*, 305 N.C. 712, 720, 291 S.E.2d 585, 591 (1982). "When a trial court's findings on a motion for appropriate relief are reviewed, these findings are binding if they are supported by competent evidence and may be disturbed only upon a showing of manifest abuse of discretion. However, the trial court's conclusions are fully reviewable on appeal." *State v. Lutz*, 177 N.C. App. 140, 142, 628 S.E.2d 34, 35 (2006) (citation omitted).

### B. Analysis

Criminal defendants possess a Constitutional right to be present at all stages of their trial. *See Kentucky v. Stincer*, 482 U.S. 730, 745, 96 L. Ed. 2d 631, 647 (1987). The Supreme Court of the United States has also held a defendant may waive his right, in non-capital cases, to be present where he "voluntarily absents" himself. *See Taylor v. United States*, 414 U.S. 17, 19, 38 L. Ed. 2d 174, 177 (1973).

The Supreme Court of North Carolina has recognized a "[t]rial court has a constitutional duty to institute, sua sponte [sic], a competency hearing if there is

substantial evidence before the court indicating that the accused may be mentally incompetent." *State v. Young*, 291 N.C. 562, 568, 231 S.E.2d 577, 581 (1977); *see also* N.C. Gen. Stat. § 15A-1002 (2021). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Denny*, 361 N.C. 662, 664-65, 652 S.E.2d 212, 213 (2007) (citation and quotation marks omitted).

When a defendant's capacity to proceed is questioned during the trial, the court must determine whether a hearing is necessary, and must decide "whether there was substantial evidence before the trial court as to [the defendant's] lack of capacity to truly make such a voluntarily decision" to absent himself from the trial. *Sides*, 376 N.C. at 459, 852 S.E.2d at 177. A trial judge must conduct a fact-intensive inquiry when evaluating whether a *sua sponte* competency hearing is necessary. See *Id.* "The method of inquiry [rests] within the discretion of the trial judge, the only requirement being that [the] defendant be accorded due process of law." *State v. Gates*, 65 N.C. App. 277, 281, 309 S.E.2d 498, 501 (1983).

A defendant "must be aware of the processes taking place, of his right and of his obligation to be present, and he must have no sound reason for remaining away" in order to voluntarily waive his right to be present at trial. *Taylor*, 414 U.S. at 17 n.3, 38 L. Ed. 2d at 177 n.3 (citation omitted).

This Court has previously held: "[e]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are

all relevant" to an inquiry into a defendant's competency. *State v. McRae*, 139 N.C. App. 387, 390, 533 S.E.2d 557, 559 (2000).

Defendant's MAR allegations and the trial court's granting in part and denying in part of relief was based upon its application of *State v. Sides.* In *Sides*, the Supreme Court reviewed a defendant's appeal, who was charged with four counts of felony embezzlement. After the first three days of trial, the defendant intentionally ingested sixty Xanax tablets. *Id.* at 450, 852 S.E.2d at 172. A doctor evaluated the defendant and recommended she be involuntarily committed, checking the box on the petition form describing her as "'mentally ill and dangerous to self or others or mentally ill and in need of treatment in order to prevent further disability or deterioration that would predictably result in dangerousness.'" *Id.*

A magistrate found reasonable grounds to conclude the defendant required involuntary commitment, and she began a period of commitment. *Id.* at 451, 852 S.E.2d at 172. A psychiatrist evaluated her the next day, and noted the defendant remained suicidal and required inpatient stabilization. *Id.*

Our Supreme Court held the trial court erred by presuming the defendant's suicide attempt was a voluntary waiver of her right to be present at the trial. After her attempt, the trial court sought information on whether the absence was voluntary or involuntary. *Id.* at 451, 852 S.E.2d at 173. The trial court recessed the proceedings after reviewing draft orders from the State. *Id.* at 452, 852 S.E.2d at 173.

The trial court in *Sides* intended to wait until the following Monday, when the

defendant would be released or the trial court would have access to her medical records. *Id.* at 452-53, 852 S.E.2d at 173-74. Proceedings resumed on the following Monday, while the defendant remained hospitalized. *Id.* at 453, 852 S.E.2d at 174. The trial court read the defendant's medical records, which included the recommendation from doctors for her to remain hospitalized, as well as information about her mood disorder history and her pharmacy of prescriptions: Haldol for agitation, Vistaril for anxiety, Trazodone to aid sleep, and 100 milligrams of Zoloft daily. The trial court reviewed the medical records and confirmed with defense counsel that they had not observed anything, which would indicate the defendant lacked competency to proceed at trial. *Id.* The trial court ruled defendant "voluntarily by her own actions made herself absent from the trial" over defense counsel's objection. *Id.* at 454-455, 852 S.E.2d at 174.

The Court in *Sides* held that while a defendant may voluntarily waive the constitutional right to be present at trial, the defendant may only waive the right when she is competent. *Id.* at 456, 852 S.E.2d at 175. The trial court erred "by essentially skipping over the issue of competency and simply assuming that [the] defendant's suicide attempt was a voluntary act that constituted a waiver of her right to be present during her trial, [and] both the majority at the Court of Appeals and the trial court had 'put the cart before the horse.'" *Id.* at 457, 852 S.E.2d at 176. "Once the trial court had *substantial evidence* that [the] defendant may have been incompetent, it should have sua sponte [sic] conducted a competency hearing to

determine whether she had the capacity to voluntarily waive her right to be present during the remainder of her trial." *Id.* (emphasis supplied).

Our Supreme Court held:

> In such cases, the issue is whether the trial court is required to conduct a competency hearing before proceeding to determine whether the defendant made a voluntary waiver of her right to be present, or, alternatively, whether it is permissible for the trial court to forego a competency hearing and instead assume a voluntary waiver of the right to be present on the theory that the defendant's absence was the result of an intentional act.

*Id.* at 457, 852 S.E.2d at 175–76.

Our Supreme Court further held:

> [T]he issue of whether substantial evidence of a defendant's lack of capacity exists so as to require a sua sponte competency hearing requires a fact-intensive inquiry that will hinge on the unique circumstances presented in each case. *Our holding should not be interpreted as a bright-line rule that a defendant's suicide attempt automatically triggers the need for a competency hearing in every instance.* Rather*, our decision is based on our consideration of all the evidence in the record when viewed in its totality.*

*Id.* at 466, 852 S.E.2d at 182 (emphasis supplied).

Before oral arguments were presented but after briefing was completed in this case, the Supreme Court of North Carolina reviewed this Court's unanimous analysis of a similar issue in *State v. Flow*, __ N.C. __, __, __ S.E.2d __, __ (2023).

> The morning of the sixth day of the trial before the jury was to be charged, Defendant was being escorted from the

Gaston County Jail. At some point, Defendant indicated he had forgotten his glasses in his cell and asked if he could go and get them. Defendant was standing over the ledge of the second-floor mezzanine. Detention officers reported to the second-floor mezzanine after being told Defendant was "hanging" on the second-floor mezzanine approximately sixteen feet off of the ground. Detention officers told Defendant not to jump, but Defendant jumped feet first. Defendant fell onto a metal table and landed on the ground. Defendant suffered injuries to his left leg and ribs. Defendant was transported to the hospital and underwent surgery to reduce a fracture in his femur.

The trial court conducted a hearing to determine whether Defendant's absence was voluntary. The trial court considered and denied Defendant's counsel's motion for the court to make further inquiry into his capacity to proceed.

The trial court ruled Defendant had voluntarily absented himself from the proceedings, and the trial would continue without Defendant present. The jury charge, jury deliberations, and sentencing commenced without Defendant present. Defendant's counsel objected to each phase proceeding outside of Defendant's presence.

*State v. Flow*, 277 N.C. App. 289, 295, 859 S.E.2d 224, 228 (2021).

Unlike in *Sides*, nothing in the defendant's prior record, conduct, or actions in *Flow's* had provided the trial court or anyone else with notice or evidence he may have been incompetent. Our Supreme Court noted:

Although the trial court declined to specifically consider whether defendant had manifested a "suicidal gesture" at the time of his jump [from a second floor courthouse balcony], we do not deem the trial court's approach to connote inadequate contemplation by the tribunal of the evidence presented on defendant's capacity. Suicidality does not automatically render one incompetent; conversely, a defendant may be found incompetent by way of mental

- 14 -

illness without being determined to be suicidal. However, a defendant cannot be found to have acted voluntarily if he lacked capacity at the time of his conduct in question. Logically, competency is a necessary predicate to voluntariness. By receiving evidence concerning defendant's state of mind leading up to, and at the time of, his apparent suicide attempt, the trial court was able to determine whether defendant had acted voluntarily and had thereby waived his right to be present at all stages of his trial. Clearly, the trial court considered all information relative to defendant's capacity which was presented to it and found, implicitly at least, that defendant was competent to proceed to trial. Therefore*, the trial court was not required to make a specific determination regarding whether defendant's acts amounted to a suicidal gesture.*

*Flow*, __ N.C. at __, __ S.E.2d at __ (emphasis supplied) (internal citations, quotation marks, and brackets omitted).

Defendant argues a "bona fide doubt of his capacity and competency arose during trial when he became 'stuporous' and non-responsive." Aside from the act and side effects brought about by Defendant's alleged voluntary ingestion of mind and mood altering sedatives and alcohol, Defendant does not offer any prior history or evidence, much less substantial evidence, to support his assertions. Defendant did not exhibit bizarre behavior at any point during his trial or during his 35 minutes of testimony charging and submitting the case to the jury prior to assertedly ingesting Alprazolam and consuming two forty-ounce alcoholic beverages.

No substantial evidence tended to alert the court or counsel nor cast doubt on Defendant's competency prior to his voluntary actions after all the evidence was presented, the case was submitted, and the jury had commenced deliberations. The

trial court was able to observe Defendant over and throughout the course of the trial and was able to conduct two colloquies directly with Defendant prior to and after the incident. Unlike in *Sides*, the trial court was not presented with *any evidence of a history* of Defendant's mental illness. The trial court did not err in denying Defendant's MAR.

Judge Ervin's order from the MAR heading granted Defendant relief for his attaining habitual status and ordered: "The judgment entered against the defendant in these cases is vacated and the jury's verdict determining that the defendant was an [sic] habitual felon is also vacated. The remainder of the defendant's Motion for Appropriate Relief is denied. The defendant's cases will be rescheduled for further proceedings concerning his alleged status as an habitual felon and for re-sentencing."

The State failed to cross appeal or seek further review of the MAR order vacating Defendant attaining habitual felon status and ordering another habitual felon status hearing and resentencing on the issue. These unappealed portions of the order are not before this Court and remain undisturbed.

Neither party cited, briefed, nor filed a Memorandum of Additional Authority for either this Court's unanimous opinion in *Flow* nor the Supreme Court's affirmance opinion thereof until three days prior to arguments. *See* N.C. R. Pro. Conduct 3.3(a)(2) ("A lawyer shall not knowingly: fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel[.]").

## V.    Structural and Harmless Error

Presuming, without deciding, the trial court erred by *sua sponte* not holding a further competency inquiry or hearing, any purported error is not structural and is harmless beyond a reasonable doubt.

In *Flow*, the Supreme Court of North Carolina examined the defendant's statutory and due process challenges to his competency to proceed during trial following his volitional and intentional acts.  Defendant here only asserts due process challenges under the Constitution of the United States and not under the North Carolina Constitution.

### A.  Standard of Review

"The standard of review for alleged violations of constitutional rights is *de novo*."  *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009) (citation omitted).  "When violations of a defendant's rights under the United States Constitution are alleged, harmless error review functions the same way in both federal and state courts."  *State v. Ortiz-Zape*, 367 N.C. 1, 13, 743 S.E.2d 156, 164 (2013) (quoting *State v. Lawrence*, 365 N.C. 506, 513, 723 S.E.2d 326, 331 (2012)).

By enacting N.C. Gen. Stat. § 15A-1443(b), our General Assembly "reflects the standard of prejudice with regard to violation[s] of the defendant's rights under the Constitution of the United States, as set out in the case of *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705 (1967)."  N.C. Gen. Stat. § 15A-1443 official cmt. (2021).  The burden falls "upon the State to demonstrate, beyond a reasonable doubt, that the

error was harmless." N.C. Gen. Stat. § 15A-1443(b) (2021); *see also Brecht v. Abrahamson*, 507 U.S. 619, 630, 123 L. Ed. 2d 353, 367 (1993); *Chapman*, 386 U.S. at 24; 17 L. Ed. 2d at 710-11; *Lawrence*, 365 N.C. at 513, 723 S.E.2d at 331.

"[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24, 17 L. Ed. 2d at 708; *see also Davis v. Ayala*, 576 U.S. 257, 267, 192 L. Ed. 2d 323, 332-33 (2015); N.C. Gen. Stat. § 15A-1443(b).

## B. Analysis

Defendant asserts the trial court's failure to *sua sponte* hold additional inquiry into his competency is "structural error and is reversible *per se*." *State v. Garcia*, 358 N.C. 382, 409, 597 S.E.2d 724, 744 (2004).

The Supreme Court of the United States has made "a distinction between structural errors, which require automatic reversal, and all other errors, which are subject to harmless-error analysis. *Arnold v. Evatt*, 113 F.3d 1352, 1360 (4th Cir. 1997). "The United States Supreme Court emphasizes a strong presumption against structural error." *State v. Polke*, 361 N.C. 65, 74, 638 S.E.2d 189, 195 (citing *Neder v. United States*, 527 U.S. 1, 9, 144 L. Ed. 2d 35, 47 (1999)), *cert denied*, 552 U.S. 836, 169 L. Ed. 2d 55 (2006).

Structural errors are rare Constitutional errors, which prevent a criminal trial from "reliably serv[ing] its function as a vehicle for determination of guilty or innocence." *Garcia*, 358 N.C. at 409, 597 S.E.2d at 744 (citation omitted).

The Supreme Court of North Carolina has held:

> The United States Supreme Court has identified only six instances of structural error to date: (1) complete deprivation of right to counsel, *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); (2) a biased trial judge, *Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749, 5 Ohio Law Abs. 159, 5 Ohio Law Abs. 185, 25 Ohio L. Rep. 236 (1927); (3) the unlawful exclusion of grand jurors of the defendant's race, *Vasquez v. Hillery*, 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986); (4) denial of the right to self-representation at trial, *McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984); (5) denial of the right to a public trial, *Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984); and[,] (6) constitutionally deficient jury instructions on reasonable doubt, *Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). *See Johnson v. United States*, 520 U.S. 461, 468-69, 117 S. Ct. 1544, 137 L. Ed. 2d 718, 728 (identifying the six cases in which the United States Supreme Court has found structural error).

*Polke*, 361 N.C. at 73, 638 S.E.2d at 194.

The United States Court of Appeals for the Fourth Circuit has warned "judges should be wary of prescribing new structural errors unless they are certain that the error's presence would render every trial in which it occurred unfair." *Arnold*, 113 F.3d at 1360. Defendant's alleged "structural error" does not fall under any of the six cases in which the Supreme Court of the United States has identified as structural error. This alleged Constitutional error, like all other Constitutional errors not so identified by the Supreme Court of the United States, is subject to harmless error review. Defendant's *per se* argument is overruled.

The State argues any purported error was harmless beyond a reasonable doubt because Defendant was competent throughout his trial and testimony and any alleged doubt to his competency did not arise until after all evidence was presented, closing arguments had been completed, the jury was charged, the case was submitted, and jury deliberations had begun. Defendant argues a criminal defendant possesses a Constitutional right to be present at all stages of their trial. *See Stincer*, 482 U.S. at 745, 96 L. Ed. 2d at 647.

Defendant had actively participated in his trial and testified extensively on his own behalf. The trial court noted:

> Defendant's counsel has not suggested anything that the defendant could have done during the course of responding to the jury's requests that would have altered the outcome of [the] jury's deliberations and this Court does not believe that the defendant's inability to participate in this stage of this trial would have affected the outcome.

The State correctly notes Defendant was represented by able and competent counsel, who was present and did not question or move for further inquiry. Defendant did not exhibit any bizarre or concerning behaviors during his trial prior to leaving the courtroom contrary to instruction, and voluntarily ingesting a controlled substance and alcohol while the jury was deliberating his guilt. No substantial evidence tended to alert or cast doubt upon Defendant's competency prior to his actions at trial in intentional disregard of the trial court's express instructions for him to remain in the courtroom unless conferring with counsel.

The trial court was able to observe Defendant throughout the course of the trial and was able to conduct two colloquies directly with Defendant in open court with his counsel present prior to and after the incident. Reviewing the trial transcript, it is reasonable to infer from the trial court's observations and statements, and Defendant's actions after hearing all the evidence against him and having just testified at length, Defendant was able to "read the room" and observe the probable impact of the evidence and his credibility on the jury. Defendant, possibly for the first time, realized the gravity of his multiple assaults and predatory crimes on a young boy and the probable consequences and accountability he was facing. This view is also supported by Gantt, Defendant's witness, who told the trial court Defendant had consumed eight Alprazolam pills because, "[h]e was just worried about the outcome" of an extended prison sentence.

Defendant's counsel and the State did not wish to be heard on the issue. Defendant's pretrial release was revoked, he was taken into custody, examined by emergency medical personnel at the scene, and taken to the hospital for further observation and treatment. The laboratory results in the record from the hospital does not demonstrate elevated or abnormal levels of glucose to support asserted diabetes nor any debilitating health issue Defendant asserted to explain his voluntary behaviors.

Defendant was returned to court after his voluntary behaviors and in hospital medical review. Defendant had been free on bond and release and no evidence

showed the jury viewed his behaviors. The jury was specifically instructed, with consent of the State and Defendant's counsel, not to hold his absence from the courtroom against him. *See State v. Daniels*, 337 N.C. 243, 275, 446 S.E.2d 298, 318 (1994), *cert denied*, 513 U.S. 1135, 130 L. Ed. 2d 895 (1995) (This Court presumes that jurors follow the trial court's instructions.).

## VI. Conclusion

It is not the proper role of the trial court judge to sit as a second-chair defense counsel with his able counsel present. "[I]t's [the judge's] job to call balls and strikes and not to pitch or bat." Confirmation Hearing on the Nomination of John G. Roberts, Jr. to be Chief Justice of the United States: Hearing Before the Committee on the Judiciary United States Senate, 109 Cong. 56 (Statement of John G. Roberts, Jr.).

The trial court was not presented with any evidence of a prior history of Defendant's mental illness to provoke *sua sponte* further inquiry. *Sides* is inapplicable to the facts and Defendant's actions before us. *Sides*, 376 N.C. at 459, 852 S.E.2d at 177. On the issues before this Court, the trial court properly denied Defendant's MAR.

Without prior indications, the trial court was not required in the absence of motion or inquiry to *sua sponte* further inquire into Defendant's capacity to proceed following his intentional acts to intoxicate himself or to voluntarily absent himself from trial. Presuming, without deciding, any error occurred under the analysis in *Sides* or *Flow*, the State has shown it was harmless error beyond a reasonable doubt.

The order denying Defendant's MAR is affirmed.

In accordance with Judge Ervin's order on the MAR hearing, including those portions where no appeal was filed or further review sought by the State: "The judgment entered against the defendant in these cases is vacated and the jury's verdict determining that the [D]efendant was an habitual felon is also vacated. The remainder of the [D]efendant's Motion for Appropriate Relief is denied. The [D]efendant's cases will be rescheduled for further proceedings concerning his alleged status as an habitual felon and for re-sentencing." The jury's guilty verdicts on the remaining substantive crimes remain undisturbed. *It is so ordered.*

AFFIRMED AND REMANDED FOR THE PROCEEDINGS AND FOR RESENTENCING.

Judges ZACHARY and STADING concur.